Argument not to exceed 15 minutes per side. Mr. Mazzoli, you may proceed for the appellant. May it please the Court, Your Honors. Ms. Gregory. Good morning, Your Honors, and I am Mike Mazzoli. I represent Chase VowelsHarper, who's the appellant and the defendant in the criminal case. Chase, in 2021, enticed a 12-year-old girl to make images and videos of sexually explicit conduct. He is serving a 22-year prison sentence. Eight of those years basically are attributable to a finding by the district court that a particular video was sadistic. It was a video of the 12-year-old penetrating herself with a foreign object, a marker, as it turns out. That was error. That was error, as I will explain momentarily. We also challenge the sentencing on a substantive reasonableness basis, but unless the Court would wish to ask any questions about that, I think I would rather focus just exclusively on the sentencing guidelines question. The guideline that we're talking about is 2G2.1B4A. I'll refer to it as the sadistic conduct enhancement. It applies, it adds four points to the guideline calculation, if the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. That was prescribed by Congress, and that's all that you find in 2G2.1 in terms of discussion. The Sentencing Commission has not added any discussion or commentary to help courts apply this rule. So we'll be applying rules that this Court has made, and in this Court, sadistic is defined as conduct that inflicts physical pain, emotional suffering, or humiliation on the victim, on the person who's making the video. I think you make a good point that a lot of the analysis here derives from case law. Yes. And one of our most recent cases on this issue, which the district courts seem to rely almost exclusively on, is the Preston case. Yes. And I'm curious why you think that the district court shouldn't have followed Preston or made an error in following Preston. Well, it brings us to my main point, really, and that is that Preston prescribes a rule that, though possibly applicable in the great majority of cases, is not applicable to the entire spectrum of children in puberty. What Preston basically does is it takes a per se rule that this Court had for prepubescent children, a rule that said any penetration of a prepubescent child is automatically sadistic. And there's a biological certainty to that. It cannot be done without causing pain. So that per se rule reflects biology perfectly. Nobody would object to it. What the Preston case seems to say, and I don't know that it actually means to say, but what it seems to say is that there should be a per se rule for all people who are minors who penetrate themselves with a foreign object. I don't think that's necessarily what Preston meant to do or was in fact doing. Preston describes the two main published cases that set the standard for us, the corp and the cover cases. And so there's every reason to think that judges on the Preston panel went through the process that corp and cover calls for, which is a case-by-case, fact-based inquiry that asks, and if I can quote just this one part because the precise language is so important, portrays conduct that would cause an objective viewer to believe, without regard to the undepicted circumstances of the sexual encounter, that the pictured activity is inflicting physical pain, emotional suffering, or humiliation on that minor. I think it's very important to say that minor. It's looking at the victim in that image, not victims generally, not people of similar age or form or whatever it might be. No, that victim. It's a fact-based inquiry. Did that victim suffer in the engagement of the penetration in this case? I would have us kind of read Preston as kind of implicitly implying an inherently fact-based or a case-by-case analysis, despite I think what the government will say is, you know, quite some broad language in that case about, you know, any middle schooler, high schooler, and it's common sense, or to ask the question is to answer it. Yes. I mean, we have to harmonize our cases, so I appreciate your advice on how to do so, which is why I'm asking the question. And I would really like, and I think the court would have a basis for saying that Preston was speaking about the image in front of the three judges in the Preston panel. Unfortunately, there's not a detailed description of the image, and I can understand why, you know, it's hard. These are horrible, horrible things to have to write about. Why can't we refer to the judge who looked at the image? As a matter of fact, did the judge make an express finding that the minor involved here was non-prepubescent, or he didn't expressly address that? He did not, as far as I could tell, did not expressly address it. That's kind of one of the flaws in the analysis of the court, and a reason why it seems to verge closer to a per se rule, because it really makes only one finding a fact. This child penetrated herself. But there's a video of the child unclothed, so if you're questioning the judge's finding in that regard, wouldn't our task be to look at the video and decide for ourselves? Although, that's problematical, too, because I don't think that any of us on the panel here are medical experts. So why wouldn't we leave that to the judge's discretion? Well, I think that if he, in fact, well, from the face of his order, it doesn't seem that he made factual findings to support his ruling. The only factual finding he made was penetration, and penetration can and frequently is painful. But the judge didn't say that I saw that this child was suffering, or this child gave indication of embarrassment. And in fact, if you look at the video, the child, she's masturbating, she's penetrating herself, but it's masturbation. She does it briskly, without hesitation, without wincing or recoiling at any point, without crying out, without evincing any sort of embarrassment or humiliation, nothing like that. Am I wrong just factually, and I guess this might be a question for the government, but that there's no dispute that we're not dealing with a prepubescent victim in this case, that this is someone that everybody agrees has, is developed, so it doesn't kind of fall within our bucket of prepubescent minors, and falls within the corp cover analysis? Yes, indeed. That's undisputed? It is undisputed, and it's immediately evident. Once the child, the child comes from outside the frame, into the frame, instantly you can see she's not prepubescent. Well, wait a minute now, we just got both parties deciding that the child is non-prepubescent, but that's not the end of the matter, is it? The judge may have thought otherwise, and the fact that the two parties, for their own, for whatever reason, collaborating or deciding together, that's not binding on the legal disposition of whether the child, what the biological or medical status of the child was, unless you claim to have some medical expertise that I don't know about. Although I would say that if the judge had said this is a prepubescent child, I would be here arguing clear error. You can look at that video, and that is not a prepubescent child. If the judge is applying... In your opinion, that's the case? Yes. But there's a reality about puberty. The child was 12 years old, so that seems like the decision on that could go either way, and if the judge decided one way rather than the other, why should we get involved in second guessing that? Well, the concern, of course, is that puberty is not a chronological fact. It can start early in life and be very quick. It'll be over in just a few years. It can start late in life and take a long time to conclude. So the fact that she's 12 does not say that she's anywhere close to prepubescent. In fact, I think in the cover case, this court made the point that the district judge said this is a 12-year-old child. She must be a prepubescent. I think it was something along those lines. And this court said, no, that's not a fact. It could be, depending on the image. And what I'm talking about for our case would not be a rule applicable broadly. It would be just this case only. The ruling in this case only is that this 12-year-old, for reasons unique to this 12-year-old, was not feeling pain. And an objective viewer, more important, an objective viewer would watch that and would not come away saying that child was suffering. And the district judge didn't say she was. Of course, at the sentencing, you or the other counsel on the other side could have asked the district judge to make express findings in that regard, but nobody bothered to do that. No, that's true. And I suppose in the reality of the litigation in trial court, the judge had taken a good long while to make his decision. And I think sometimes an advocate will say, I don't want to ask the judge to go through that again. Out of solicitude for the judge, you wouldn't, the lawyers might not have done what was necessary legally to find the issues to protect the child. We find ourselves in difficult positions sometimes. I'm not saying it happened here, but you are correct that there was no effort to ask the judge, would you please review this, re-hear this question? Just to refresh my recollection here, I remember there's some sort of recess or stop so that the district court can view the video and then the district court issues a written decision. So it's not like you're there when the decision comes out and you can say, you know, your honor, can you put some more facts on the record? You would have to file something else or like a reconsider, you know, or something like that. So this was, so we have the judge's full analysis in his written order. There's nothing else that I'm missing. No, there's not. No. Ultimately you want us to what? Remand this matter for the district judge to in fact make detailed findings of fact rather than just a per se that, hey, this sadism enhancement applies? Yes, I think with remand for sure, with directions at least to explain to the judge what needs to be evident, objectively evident, in order for this to qualify as sadistic. I think if the court were at all inclined, it could actually remand and say, just redo the guidelines analysis without those four points. You'd have to look at the video and I don't likely ask any judge to do that. Judge Hale, in our case. Don't worry about us. If the video needs to be looked at, it's our duty to look at it. Well, to the eternal credit of all judges, that you will do that when you deem it necessary. And I will leave that to you as to whether it's necessary. But I do believe if you did look at that video, you would feel comfortable saying to Judge Hale, no disrespect at all, Judge Hale, but this is not sadistic. Cut off those four points and redo the sentencing. Thank you. May it please the court. Amanda Gregory on behalf of the United States. Based on the contents of the video, which the district court viewed, it correctly applied the four-level sadistic enhancement under 2G 2.1B4 to the video of the 12-year-old girl inserting a marker into her vagina. In doing so, the court concluded that the insertion of the marker into the 12-year-old's vagina was both painful and humiliating. Do you read the district court's as essentially applying Preston as a per se rule? If the district court wanted to apply Preston as a per se rule, I would think that it would not have even bothered to view the video and would have just relied on the PSR. Well, I mean, the district court needs, even to apply Preston, the district court needs to know that a foreign object is being inserted into the victim's vagina. So something has to be found for Preston to apply. I'm looking for reasoning in the district court's decision that extends beyond Preston. Well, to what you said there, there was already in the record in the PSR that this object was being inserted in the vagina. No one was no one was contesting that. Yet the district court took the time to adjourn the sentencing so it could view the video and consider the issue and re-adjourn this or reset the sentencing several months later. The court did not just say Preston says this. This is what the video shows. The court certainly seemed to agree with Preston. But I know I do not think that there is anything in here that shows the district court interpreted Preston as creating a per se rule and then applying it. I will say that while the Sixth Circuit's framework does require a case-by-case analysis, neither CORP nor COVR require case-by-case parsing out of the victim child's facial expressions in these videos to provide fodder for argument about whether the child is enjoying it. CORP said that many of these videos or many of these images, while looking at the four corners Just so I understand your reading of the district court's order before you go on. Sorry. So I'm reading the district court's order and it gives kind of a statement of the law, the description of the sentencing enhancement. The court must determine these two facts. You know, then the district court tells us that the victim is using what appears to be a marker inserted into her vagina and then it applies Preston and quotes Preston and cites Preston. Are there fact findings beyond that that the district court is relying on that we can say that the district court's decision is based on something more than just the insertion of a vagina? I believe that it is based on the district court. I mean, I should qualify. Preston is the decision of our court and the fact that, you know, the district court looked at it and said, hey, like, you know, I'm taking the language from Preston and applying it here is certainly what we generally ask district courts to do. This is not a, this is, this is, this is, I'm just trying to figure out what is, what is all in this order that we're supposed to be reviewing and using in our analysis? The district court says, quoting Preston, that the insertion of objects into private parts is sadistic, but then there's also a sentence that says at minimum such conduct is objectively humiliating. I think both of these sentences are based on the district court's own viewing of the video and seeing the insertion of the marker into the vagina. As I was saying, there's, the court's precedent does not require focusing on the victim's facial expressions in each of these cases because in Corp, the court said that many cases, the four corner look, examination of the image will be a straightforward inquiry. So one example that the court has provided is penetration of prepubescent minors, but that is one example. Another example the court provided in Corp was cases involving bondage. There are many cases where there's going to be a straightforward inquiry. But interestingly in Corp, we found that it wasn't a straightforward inquiry when you had a minor performing oral sex on someone and had ejaculate on their face. And we said that we don't know if that gets to sadistic. That was a hard case, right? I mean, is this case necessarily worse than that such that it doesn't need some more objective indication of pain or humiliation than having performed oral sex and have ejaculate on your face? I mean, in Cover, we said performing oral sex, a minor performing oral sex on someone, so penetration by a penis is just not enough for the enhancement. We said no. But you're saying that self-penetration by a marker is enough? Or other household objects. Well, we're doing this case. Yeah. Self-penetration by a marker is definitely enough, but penetration by a penis is not. Do you see the difficulty that you're asking us to come to here? I see how that would perhaps create a difficulty from a physical pain perspective because generally a penis would be larger than a marker. As we pointed out in our brief, there are other characteristics of a marker that would make perhaps a marker more painful, including the fact that it is both hard and flexible. Generally, markers are shaped like cylinders and thus would have an edge at the top that could damage or scratch the ridges and the wall of the vagina. So these things make it more likely to cause pain than a penis. These are things other than sheer size. But pain is not the only element here. The other consideration is humiliation. And a marker is more humiliating than a penis? Yes. We would argue that using household objects that have other intended uses for sexual gratification is more humiliating than merely engaging in sex or more humiliating than... Than having ejaculate just on your face. Yes. And the problem seems to be that, you know, you've got this four-level enhancement for sadistic conduct. And the question is, should we be almost always applying a four-level enhancement for sadistic conduct every time there's any evidence of penetration of a minor? You know, did the district court differentiate enough or are we just always going to say, okay, apply a four-level enhancement here? I don't think that's what the Sentencing Commission was trying to do. Otherwise, it wouldn't be an enhancement. It would just be part of sentencing in a case like this. Well, certainly there's lots of child pornography that doesn't involve any penetration at all or that doesn't involve penetration by a marker or by household objects. Looking at cases across other circuits, every time there was penetration by a household object, this enhancement was applied. Some of those cases are cited in our appellee brief. So you are arguing then that we should take a per se rule from Preston about household objects? This court doesn't need to do that to decide this case, but we would certainly advocate in favor of that. We said nothing wrong with this being one of the straightforward inquiries contemplated by a court in which if a child is being penetrated by a household object, that could be or should be viewed as humiliating and thus qualify for this enhancement. Preston, of course, is unpublished. Is that right? Yes. We're not bound by Preston as a precedential case. No, and nor was the district court and nor did, as I said, the district court appears to have agreed with Preston's reasoning without adopting it as a per se rule. Can I ask you actually one question about the defendant's argument as to substantive reasonableness? Yes. The district court, it seems like, took quite a long time listening to expert testimony about autism and listening to all this testimony and made some credibility determinations and things like that. The defendant looks particularly at a part of the sentencing transcript where the district court essentially says, you know, we have a lot of defendants that come in here having suffered abuse, having suffered trauma, having other mental health conditions. Autism is no different. It's not unique or doesn't, I think the term might be set apart, doesn't set this defendant apart. What do you make of that analysis? I would say it ties to the extent to which the district court found the autism relevant to the offense in terms of mitigation. It viewed it as mitigating to the extent that it affected the defendant's immaturity, but that there were other people, like one of the things that was clear on the record is that Fowles Harper had average to above average intelligence. So there could also be defendants, you know, who have severe mental issues and below average intelligence that would affect their ability to make judgments. There are other defendants who come from severely abusive backgrounds, who've undergone a lot of violence or sexual abuse. And obviously the district court sees all these people and does not think that the mitigating circumstances put forth at length in Fowles Harper's sentencing memo and by the three witnesses of the sentencing made his situation any worse such that it was so far outside the range of the guidelines or justified more than the three-year variance that the district court granted. Anything further? We urge that you affirm the district court's decision because the enhancement was correctly applied consistent with this court's precedent and the precedence of sister precedent of sister circuits and that this because the sentence is also substantively reasonable and consistent with the court's precedent. Thank you. Thank you. Mr. Rubato? Yes, your honors. I guess to begin with, counsel for the United States' discussion just recalls to mind the fact that we're dealing with a large spectrum and so many different permutations possible that the wisdom of this court in corp and cover to create a fact-based inquiry with an objective standard so that you don't have a situation where a defendant is saying, well, the child is crying, but I told her to do that. This was all just play acting. No. I mean, if there's an image that is sadistic, it is sadistic regardless of what happened off stage. But that is, in a sense, a standard that allows for every possible kind of permutation. In one case, yes. In another case, no. And that's how it should be because that's what puberty is like. No two people go through puberty in the same way and I think the wisdom of a case-by-case approach is the right one. Your honor, you asked about autism. Would you like me to touch base on that at all? I would just say it's maybe clearest from the letters that the family submitted in the sentencing and also some of the testimony from the family members. Autism for Chase has been a profoundly meaningful, important, determinative aspect of his life. And I think it's fair to say that in his dealings with that poor girl, it was, although he was in his 20s at that point, it was really more like a 14-year-old boy or a 15-year-old boy communicating with a 12-year-old girl. And I don't say that as a way of... Are you basing that on expert testimony or what? Yes. There was an expert, Walter Baker, who testified at some length and also submitted a report. At least I touch on it in my brief, mainly the main brief. Well, of course, the judge gave your client a down variant purportedly taking those matters into account and gave him three years less on his sentence as a result. Why wasn't that adequate? Well, as this court has said, it's a tough hill to climb for a defendant in my position. What I would say, though, is that Chase's autism was such a profound disturbance, if you will, in this case that the court did not take sufficient, did not give it sufficient weight. He did give it some and worked very diligently in this case, so I don't criticize anything that the judge did, but he could have, and I say should have, given it more weight. Thank you, Your Honors. All right. Thank you very much. The case is submitted.